**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0916-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

B.C.L.,[1]

     Defendant-Appellant.

_____

> Argued January 5, 2026 – Decided July 22, 2026
>
> Before Judges Natali and Bergman.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Accusation No. 24-04-0437.
>
> Patricia B. Quelch argued the cause for appellant (Helmer Conley & Kasselman, P.A., attorneys; Patricia B. Quelch, of counsel and on the brief).
>
> Nancy A. Hulett, Assistant Prosecutor, argued the cause for respondent (Linda Estremera, Middlesex County

---

[1] We use initials to identify the juvenile defendant and the witnesses to protect their identities. Rule 1:38-3(d)(5).

Prosecutor, attorney; Nancy A. Hulett, of counsel and on the brief).

PER CURIAM

Faced with multiple, serious charges lodged in a juvenile delinquency complaint, including delinquency that if committed by an adult would constitute the crime of first-degree purposeful murder, N.J.S.A. 2C:11-3(a)(1), defendant B.C.L. voluntarily agreed to waive his case to the Law Division, Criminal Part for prosecution as an adult pursuant to a "global plea resolution." After a hearing, the court granted defendant's request and the matter proceeded in adult court where that same day defendant waived his right to an indictment and pled guilty to reduced charges of second-degree vehicular homicide, N.J.S.A. 2C:11-5(a), and second-degree knowingly leaving the scene of an accident that resulted in death, N.J.S.A. 2C:11-5.1. The court accepted defendant's plea and sentenced him consistent with the plea agreement to consecutive five-year sentences to be served in the custody of the Juvenile Justice Commission, subject further to an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and assessed applicable fines and penalties.

Without first seeking to vacate his plea in the trial court, defendant now challenges the court's decisions to grant his voluntary waiver application as well as his sentence. He also, for the first time before us, asserts his plea counsel's

2

A-0916-24

performance was constitutionally ineffective under the two-part test detailed in Strickland v. Washington, 466 U.S. 668, 687 (1984), for failing to advise him properly regarding his plea agreement.

For the reasons that follow, we reject defendant's challenges to the court's decision to grant his waiver application, or to his sentence, and accordingly affirm the orders under review. We expressly do not address defendant's ineffective assistance of counsel claims in the context of this direct appeal, and instead reserve defendant's right to assert those claims in a separate post-conviction relief petition.

I.

We discern the following facts from the appellate record, police reports, court proceedings, defendant's plea colloquy, juvenile delinquency complaints, and pre-sentence report. On December 4, 2023, Old Bridge police responded to a call about a person struck by a car in a Wawa parking lot. When the officers arrived, the victim, A.P., was lying on the ground and being attended to by first aid responders. He was wearing a black Wawa jacket with noticeable tire impressions on it, moaning in pain, showing signs of shock, and was unable to answer the officers' questions. Based on his injuries, he was immediately transported to the hospital.

3

The police spoke with a witness on the scene, M.B., who advised them that he observed a white teenage male with dirty blond hair drive into the parking lot recklessly in a two-tone silver colored Ford F-150 pickup. M.B. also informed the officers that the teenager, later identified as the then seventeen-year-old defendant, went into the Wawa and left with another teenage male.

M.B. also stated that A.P. approached the defendant who shoved him in the parking lot, and when A.P. continued to follow the defendant to his truck defendant attempted to push him away. During the confrontation, A.P. was yelling for someone to help him stop both teenagers from leaving. Defendant entered his vehicle and instead of stopping to address A.P.'s concerns, who was now standing behind the truck, placed his vehicle in reverse and used the vehicle to push A.P. backwards.

A.P. then asked M.B. to block the truck with M.B.'s car. M.B. complied and moved his vehicle in an attempt to block the roadway nearest to one of the gas pumps. Defendant then maneuvered his truck around M.B.'s car, accelerated, and ran over A.P who was then standing in front of defendant's vehicle.

Officers also spoke with two other eyewitnesses, R.F. and C.R. R.F. told them he witnessed defendant run over A.P., and C.R. stated she saw defendant's

A-0916-24

truck driving erratically through the parking lot and that it nearly collided with her vehicle.

The police contacted Old Bridge High School based on their suspicion that the suspect was a student there. Based on the vehicle's description, the vice-principal advised the officers that defendant was the owner of the truck. After the police received additional inculpatory information tying defendant to the incident, he was arrested, transported to police headquarters, and his vehicle towed and impounded.

The next day officers contacted A.P. at the hospital and reported he had three broken ribs, damage to his small intestine, a bleeding spleen, and a bruised kidney. A.P. explained that he had recognized the defendant from two separate instances when defendant had allegedly stolen gasoline from the Wawa. The officers later learned from the hospital that A.P. was in critical but stable condition, intubated, on a ventilator, and in an induced coma. Over the next fifty-days, A.P. underwent numerous surgeries but ultimately succumbed to his injuries and died.

Defendant was initially charged in juvenile court with first-degree criminal attempted murder, N.J.S.A. 2C:5-1(a)(1)-(2) and N.J.S.A. 2C:11-3(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree

A-0916-24

leaving the scene of an accident, N.J.S.A. 2C:12-1.1; third-degree hindering, N.J.S.A. 2C:29-3(b)(1); fourth-degree tampering, N.J.S.A. 2C:28-6(1); and fourth-degree obstruction, N.J.S.A. 2C:29-1(a). After A.P.'s death, the State charged defendant with upgraded charges that if committed by an adult would constitute first-degree purposeful murder; second-degree leaving the scene of an accident; third-degree hindering; fourth-degree tampering; and fourth-degree obstruction.

At the first case management conference, the State and defense counsel informed the court that plea discussions were underway to resolve the case. The State informed the court it had amended their plea offer, and defendant, now over the age of eighteen, was seriously considering it. In light of defendant's age and the consequences of his actions, the State expressed that the victim's family "want[ed] to see [defendant] prosecuted in adult court and facing adult time." Accordingly, the State noted that the conditions of the plea offer would expressly require defendant to "voluntarily waive" to adult court in the Law Division, pursuant to N.J.S.A. 2A:4A-27, in exchange for lesser charges that would otherwise be "non-waivable offenses," pursuant to the involuntary waiver statute, N.J.S.A. 2A:4A-26.1.

In response, defense counsel stated he discussed this new plea offer with the State and with defendant a "great deal." He noted that he and his client understood that if he did not accept the plea offer, the State was prepared to pursue the "[involuntary] waiver route," pursuant to N.J.S.A. 2A:4A-26.1, and charge defendant with waivable offenses under that statute, including first degree purposeful murder. Defendant understood that under that option, the State intended to "go[] to [a] jury trial."

At the subsequent waiver hearing, scheduled after defendant had sufficient time to consider the consequences of the plea, the parties informed the judge that they had resolved the case. Specifically, defendant's counsel stated that defendant appeared before the court "for a voluntary waiver into the adult system as part of a global plea resolution," and defendant was "ready to take the necessary allocution . . . to waive [into] the adult system." Defense counsel further informed the juvenile court judge that defendant would be entering a guilty plea that same day in adult court if possible.

As noted, the plea agreement provided that defendant would voluntarily waive into the adult system but plead guilty in adult court to otherwise non-waivable offenses under the involuntary waiver statute, specifically second-degree vehicular homicide and second-degree leaving the scene of an accident.

A-0916-24

Pursuant to the plea, the State would recommend a five-year sentence, the minimum term of imprisonment for a second-degree offense, subject to NERA for the vehicular homicide charge, and a consecutive five-year sentence for leaving the scene of an accident. Defense counsel reserved the right to seek a downgraded sentence in the third-degree range. The State further agreed to not seek sentencing before September 2024 due to the fact defendant was diagnosed with leukemia and had significant health-related issues.

At the waiver hearing, defense counsel questioned defendant to establish the factual basis for his voluntary waiver. Defendant testified he understood that he was charged with certain offenses which took place on December 4, 2023, while he was still a juvenile. He acknowledged that he understood how an involuntary waiver hearing proceeded, including that the State would be required to establish "probable cause that [he] committed certain offenses that are . . . waivable to the adult court." He also stated he understood that if the State could not demonstrate probable cause, he "would not be waived up on those charges."

He further stated he and his counsel had discussed his voluntary waiver "at length" and recognized the "certain risks associated with [proceeding to an involuntary waiver hearing]," including the State rescinding the plea agreement.

8

He stated he understood that once waived to adult court, he "come back" to juvenile court, even if he decided to not accept the guilty plea before the adult court. He acknowledged he asked his defense counsel to request the juvenile court judge "sign an order where [he] . . . waive[d his] right to have that probable cause hearing and instead . . . pass right through . . . and . . . go right up to the adult court . . . with the intention of entering the guilty plea on the terms . . . discussed."

The judge then addressed defendant directly. In response to the judge's questions, defendant confirmed he had no additional questions for counsel or the court, reiterated that he had sufficient time to discuss matters with his counsel, was satisfied with his counsel's performance, and was not being forced or coerced to agree to the voluntary waiver. Defendant also acknowledged he was not under the influence of any substances to affect his ability to understand the proceedings. In light of defendant's responses, the judge concluded she was "satisfied that [defendant was] voluntarily waiving up" and that he sufficiently understood "his rights and exposure" with respect to this decision.

Defendant entered his guilty plea immediately after the case was transferred to adult court. The court addressed defendant to ensure his guilty plea was being entered voluntarily, intelligently, and knowingly, and defendant

A-0916-24

further stated he reviewed the plea form with counsel in its entirety. He affirmed that counsel had reviewed with him all the discovery in his case, he was satisfied with counsel's performance, and had sufficiently consulted with his mother. He further acknowledged that he waived his right to indictment by grand jury.

Defendant also understood the second-degree crimes to which he would pleaded guilty carried a maximum of ten years imprisonment and of the NERA consequences related to the vehicular homicide charge. The court then proceeded with an accusation, and defendant acknowledged that his conduct "fit[] the elements of . . . vehic[ular] homicide, the reckless driving resulting in the death of . . . A.P.[,] [a]nd in addition . . . after striking [A.P.], instead of stopping, instead of pulling over . . . [he] continued on [his] way and left the scene of the motor vehicle crash that resulted in the death of A.P."

Following defendant's guilty plea, at the sentencing hearing, the court applied mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) ("the defendant has no history of prior delinquency or criminal activity"); mitigating factor nine, N.J.S.A. 2C:44-1(b)(9) ("the character and attitude of the defendant indicate that the defendant is unlikely to commit another offense"); and mitigating factor fourteen, N.J.S.A. 2C:44-1(b)(14) ("the defendant was under [twenty-six] years of age at the time of the commission of the offense"). The court also considered

aggravating factor two, N.J.S.A. 2C:44-1(a)(2) ("the gravity and seriousness of harm inflicted on the victim"); aggravating factor three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will commit another offense"); and aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) ("the need for deterring the defendant and others from violating the law").  In light of these factors and the weight the court allocated to each, it concluded "the aggravating factors outweigh[ed] the mitigating factors" and that the "interest of justice" did not require sentencing defendant as a "third-degree offender."

With respect to the mitigating factors, the court noted defendant's "medical history and the endurances that [he] has overcome" and defendant's "character, attitude, and sincere remorse."  Then, it applied "appropriate weight" to mitigating factor seven, in light of the fact that defendant had "no prior history of criminal conduct."  Next, it applied "moderate weight" to mitigating factor nine and found defendant "did not demonstrate . . . remorse . . . on the date of the incident when [he] left the scene," but concluded that defendant "had some time to reflect."  The court also applied "appropriate weight" to mitigating factor fourteen, based on his age.

With respect to the aggravating factors, the court afforded "heightened weight" to aggravating factor two, in light of the "gravity of injuries" defendant

11

caused and the fact that the victim endured "an emotional rollercoaster" during his critical care treatment, including "a myriad of various surgeries . . . ." The court applied "light weight" to aggravating factor three and found defendant was a "risk to commit another offense due to [the fact that his offense involved] a motor vehicle infraction." The court also applied "heightened weight" to aggravating factor nine due to the "obligation, duty, and responsibility" that drivers possess "to operate that motor vehicle in a safe fashion," including providing help to those injured at accidents and alerting police.

The court sentenced defendant in accordance with the plea agreement to an aggregate sentence of ten years in prison and committed defendant to the custody of a juvenile facility until he reached the age of twenty-one. It stated defendant's vehicular homicide charge was subject to NERA, and his knowingly leaving the scene of an accident charge required a consecutive term.

II.

This appeal followed in which defendant raises three points for our consideration which we have reordered to reflect the manner in which we address them:

POINT I

THE DEFENDANT WAS DENIED DUE PROCESS
IN THE JUVENILE WAIVER HEARING.

12

A-0916-24

POINT II

THE COURT ABUSED ITS DISCRETION BY FAILING TO CONSIDER MITIGATING FACTORS BASED UPON THE FACTS AND IMPROPERLY WEIGHING THE AGGRAVATING AND MITIGATING FACTORS FOUND BY THE COURT, REQUIRING REMAND FOR RESENTENCING.

POINT III

THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT THE WAIVER HEARING.

A. THE ATTORNEY'S PERFORMANCE WAS DEFICIENT.

B. BUT FOR COUNSEL'S MISINFORMATION DEFENDANT WOULD NOT HAVE PLED GUILTY.

We reject these arguments and affirm. The record as we have detailed demonstrates beyond any doubt that defendant was sufficiently apprised of the consequences of his voluntary waiver and guilty plea and was afforded sufficient due process protections. Moreover, we decline to second guess the court's sentencing decision because the court's determination and application of the aggravating and mitigating factors was fully supported by the record and in accordance with the parties' plea agreement, which we conclude was reasonable and not a shock to our judicial conscience. Finally, we do not address defendant's ineffective assistance of counsel claims because resolution of

13

defendant's contentions involve consideration of evidence that lies outside this record.[2]

### III.

First, defendant contends he was denied due process at his juvenile waiver hearing because the waiver hearing "failed to address one very important provision . . . of the involuntary waiver statute, N.J.S.A. 2A:4A-26.1(f)(2)." Defendant maintains that had counsel or the court been required to advise him of this provision, his decision to voluntarily waive to the adult court would have been different. Defendant argues that he should have been specifically informed at the time of his decision to accept the State's plea offer, which required voluntary waiver to adult court, that any conviction for a non-waivable offense would have resulted in a remand to Family Court for a juvenile disposition.

Further, defendant asserts that the facts of the case here do not provide support for probable cause that he acted knowingly or purposely to cause the death of A.P. and that lack of proof was "buttressed" by his plea colloquy. He maintains that the plea agreement's contingency on a voluntary waiver was the State's means to avoid the probable cause requirement because the State "did not

---

[2]  As noted, defendant reserves his right to assert a claim for post-conviction relief pursuant to Strickland, 466 U.S. at 687.  Nothing in our opinion shall be interpreted as an expression of our view of the merits of any such claim.

have sufficient proofs as to murder." He urges us to prevent a "travesty of justice in this case" and relies upon the dissent in State v. Heitzman, 107 N.J. 603, 606 (1987); State v. Bellamy, 178 N.J. 127, 138 (2003); Padilla v. Kentucky, 599 U.S. 356, 369-71 (2010); State v. Nunez-Valdez, 200 N.J. 129 (2009); and State v. Gaitan, 209 N.J. 339, 362 (2012), where courts have "responded to prevent injustice."

In response, the State contends defendant's arguments fail, in part, on procedural grounds because defendant's guilty plea waived defendant's right to appeal "all issues which were or could have been addressed by the trial court before the guilty plea." While we reject the State's contention and address defendant's arguments substantively, to the extent defendant argued the court committed error in the manner in which it conducted the waiver hearing, or suggests his due process rights were in any way infringed, we reject all those contentions as noted and discussed, infra.

We first address the substantive legal prompts that guide our analysis. "Our standard of review in juvenile waiver cases 'is whether the correct legal standard has been applied, whether inappropriate factors have been considered, and whether the exercise of discretion constituted a "clear error of judgment" in

all of the circumstances.'" State in the Int. of J.F., 446 N.J. Super. 39, 51-52 (App. Div. 2016) (quoting State v. R.G.D., 108 N.J. 1, 15 (1987)).

We have previously recognized in State in Interest of Z.S., the use of the term "waiver" in the juvenile waiver context is unique. 464 N.J. Super. 507, 513 n.3 (App. Div. 2020). Our Legislature has enacted two statutes which govern juvenile waiver. N.J.S.A. 2A:4A-27 authorizes juveniles aged fourteen or older, charged with delinquency, to voluntarily elect a transfer to adult court. In contrast with this statute, N.J.S.A. 2A:4A-26.1 sets forth the process for a prosecutor to seek involuntary waiver of jurisdiction without consent of the juvenile to adult court.

"The decision whether to seek [involuntary] waiver vests in the prosecutor." State in the Int. of E.S., 252 N.J. 331, 342 (2022). "'The Juvenile Code allows prosecutors to seek to proceed in adult court against juveniles who have committed certain serious offenses through the waiver process set forth in N.J.S.A. 2A:4A-26.1." Ibid. (quoting State in the Int. of N.H., 226 N.J. 242, 248 (2016)). "Under the [involuntary] waiver statute, prosecutors have sixty days after receipt of a complaint to move for waiver." E.S., 252 N.J. at 342 (citing N.J.S.A. 2A:4A-26.1(a)). The prosecution must establish that "[t]he juvenile was fifteen years of age or older at the time of the alleged delinquent

act; and . . . [t]here is probable cause to believe that the juvenile committed a delinquent act which if committed by an adult would constitute" one or more enumerated offenses under the statute. N.J.S.A. 2A:4A-26.1(c)(1) to (2).

If a juvenile is eligible for involuntary waiver under subsections (c)(1) and (c)(2) of the statute, the prosecutor considers a statutory list of eleven factors to determine whether to seek waiver in a given case. N.J.S.A. 2A:4A-26.1(c)(3)(a) to (k). At a waiver hearing, the court reviews the evidence offered by both the State and the juvenile. N.J.S.A. 2A:4A-26.1(b). If the prosecution makes the requisite showing, "the court shall waive jurisdiction of a juvenile delinquency case." N.J.S.A. 2A:4A-26.1(c).

N.J.S.A. 2A:4A-26.1(c)(2) provides the "certain serious offenses," for which a prosecutor can pursue involuntary waiver against a juvenile defendant. E.S., 252 N.J. at 342. The statute has a presumption in favor of waiver for juveniles who commit serious criminal acts, and such a juvenile must overcome an associated "heavy burden" to defeat a waiver motion. Z.S., 464 N.J. Super. at 519 (citing R.G.D., 108 N.J. 12). These offenses include, in relevant part, "criminal homicide, other than death by auto," and "second-degree aggravated assault," both offenses for which defendant was originally charged. N.J.S.A. 2A:4A-26.1(c)(2)(a), (g). We note the offenses to which defendant ultimately

pleaded guilty, vehicular homicide and knowingly leaving the scene of an accident, are not enumerated as offenses that a prosecutor can pursue involuntary waiver against a juvenile defendant. Ibid.

We further note, as pertinent here, in the event that a juvenile is not convicted of the waivable offenses but is convicted of other offenses that are otherwise not enumerated under N.J.S.A. 2A:4A-26.1(c)(2), N.J.S.A. 2A:4A-26.1(f)(2) provides that "a conviction for any other [non-waivable] offense shall be deemed a juvenile adjudication and be remanded to the . . . Family Part for disposition, in accordance with the dispositional options available to that court . . . ."

Conversely, N.J.S.A. 2A:4A-27 governs voluntary waiver for juveniles. It provides, in relevant part, that "[a]ny juvenile [fourteen] years of age or older charged with delinquency may elect to have the case transferred to the appropriate court having jurisdiction." N.J.S.A. 2A:4A-27. Our Supreme Court has recognized, "waiver to the adult court is the single most serious act that the juvenile court can perform . . . because once waiver of jurisdiction occurs, the child loses all the protective and rehabilitative possibilities available to the Family Part." R.G.D., 108 N.J. 4-5.

Further, plea bargaining is "firmly institutionalized in this State as a legitimate, respectable and pragmatic tool in the efficient and fair administration of justice." State v. Means, 191 N.J. 610, 618 (2007). "The cornerstone of the plea bargain system is the 'mutuality of advantage' it affords to both defendant and the State." State v. Taylor, 80 N.J. 353, 361 (1979) (citations omitted). A plea agreement "enables a defendant to reduce his penal exposure and avoid the stress of trial while assuring the State that the wrongdoer will be punished[,] and that scarce and vital judicial and prosecutorial resources will be conserved." Ibid.

The interpretation of a plea agreement is informed by basic principles of contract law. Means, 191 N.J. at 622. As the Court observed in Means:

> When two parties reach a meeting of the minds and consideration is present, the agreement should be enforced. The essence of a plea agreement is that the parties agree that defendant will plead guilty to certain offenses in exchange for the prosecutor's recommendation to dismiss other charges and suggest a certain sentence, all subject to the right of the court to accept or reject the agreement in the interests of justice.
>
> [Ibid.]

In general, plea agreements are to be treated like contracts between the prosecutor and defendant. See ibid.; State v. Conway, 416 N.J. Super. 406, 410-12 (App. Div. 2010). "The analogy to contract law is, however, in certain

circumstances imperfect, and [courts] do not always follow it." United States v. Transfiguracion, 442 F.3d 1222, 1228 (9th Cir. 2006); see e.g., United States v. Garcia, 956 F.2d 41, 44 (4th Cir. 1992) (declining to apply the parol evidence rule in the context of a plea agreement).  This is because "[a] plea bargain is not a commercial exchange" but rather "an instrument for the enforcement of the criminal law." United States v. Barron, 172 F.3d 1153, 1158 (9th Cir. 1999). "The interests at stake and the judicial context in which they are weighed require that something more than contract law be applied." Ibid.

At bottom, the "validity of a plea agreement is guided by considerations of fundamental fairness and public policy." State v. Subin, 222 N.J. Super. 227, 237 (App. Div. 1988).  "It is axiomatic in plea bargaining that all material terms and relevant consequences be clearly disclosed, fully understood, and knowingly and voluntarily accepted by the defendant." State v. Warren, 115 N.J. 433, 444 (1989).  As such, when evaluating a defendant's understanding of a plea agreement "we generally limit our review to the terms of the written plea agreement and the statements made under oath during the plea colloquy." United States v. Jackson, 21 F.4th 1205, 1213 (9th Cir. 2022); see Conway, 416 N.J. Super. at 412 (stating that the conditions of a plea

agreement "should [be] explicitly stated . . . in the written plea agreement or in the prosecutor's confirmation of the agreement on the record").

"Because the sworn statements during the plea colloquy 'speak[ ] in terms of what the parties in fact agree to,' United States v. Benchimol, 471 U.S. 453, 455 (1985), they 'carry a strong presumption of truth,' Muth v. Fondren, 676 F.3d 815, 821 (9th Cir. 2012)." Jackson, 21 F.4th at 1213 (alteration in original); see Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."). Accordingly, our Rules mandate that the terms of a plea agreement be expressly stated on the record. R. 3:9-3(b) (providing that plea agreements "shall be placed on the record in open court at the time the plea is entered").

Despite the importation of contract law principles, a plea agreement is not like a private contract that comes to a reviewing court's attention only after a dispute arises, at which point the court is called upon for the first time to divine the intention of the parties. In the plea-bargaining setting, the parties propose a negotiated resolution of charges, but it is the court, ultimately, that accepts or rejects a plea agreement. As such, it is incumbent on the parties to fully apprise

21

A-0916-24

the court of the terms and conditions of the agreement so that it can properly exercise its discretion in deciding whether the interests of justice will be served by effectuating the agreement. See R. 3:9-2 (reposing with the trial court the discretion to accept a plea of guilty after questioning the defendant and obtaining "an understanding of the nature of the charge and the consequences of the plea").

As a procedural matter, first, we reject the State's contention that defendant's unconditional guilty plea in adult court constituted a waiver to contest the voluntary nature of his plea. We acknowledge it is well-established that an individual who pleads guilty is generally foreclosed from claiming a constitutional infringement on appeal, subject to narrow exceptions not applicable here. See State v. Knight, 183 N.J. 449, 470 (2005) (quoting State v. Crawley, 149 N.J. 310, 316 (1997)) ("Generally, a defendant who pleads guilty is prohibited from raising, on appeal, the contention that the State violated his constitutional rights prior to the plea.").

A defendant's right to challenge the voluntary nature of his plea, however, does not fall within the holding in Knight. By way of example, challenging the factual basis of the plea is not waived. See Pressler & Verniero, Current N.J. Court Rules, cmt. 1.3.2 on R. 3:9-2 (2026) ("[d]espite the usual finality of an unconditional guilty plea, defendant retains the right to raise on appeal the

question as to whether there was in fact a factual basis for the plea"); see also

State v. Urbina, 221 N.J. 509, 527-28 (2015). Like a defendant's right to challenge the factual basis of the plea, we are satisfied defendant did not waive his right to challenge the voluntariness of the plea. See also State v. Slater, 198 N.J. 145, 150 (2009).

With respect to defendant's substantive arguments, and applying the aforementioned legal principles to the facts in the record, we are also satisfied the juvenile court judge properly advised defendant of the type of hearing he would receive if he did not consent to voluntary waiver. Specifically, the record reveals the juvenile court judge expressly informed defendant that for the State to try him as an adult pursuant to an involuntary waiver, they would have to show probable cause that he committed certain offenses waivable to the adult court. At the hearing, defendant responded that he understood the State's burden of proof at the probable cause portion of an involuntary waiver hearing and that he would be waived only on charges to which the court found probable cause. Further, defendant and his counsel both confirmed that the State's recitation of the terms of the agreement was correct.

The record of defendant's plea hearing establishes that "all material terms and relevant consequences [were] clearly disclosed, fully understood, and

knowingly and voluntarily accepted by the defendant," <u>Warren</u>, 115 N.J. at 444, and thus, we conclude that enforcing the terms of the plea agreement, which significantly reduced his potential penal exposure, was proper and in accordance with notions of "fundamental fairness and public policy." <u>Subin</u>, 222 N.J. Super. at 237.

As in all cases, and particularly here, context matters. When defendant and counsel approached the highly experienced Family Part judge, counsel informed her he spoke to the State about the new plea offer and with defendant a "great deal," as noted. Neither defendant's counsel, defendant, nor the State indicated any reluctance or uncertainty regarding the plea or the decision that defendant would waive voluntarily to adult court to effectuate it. Nor was the court informed, in any way, that defendant and counsel were unaware of the consequences of a voluntary as opposed to an involuntary waiver.

In fact, the contrary is true—the record indicates that both parties understood the plea agreement would require defendant to waive to adult court to plead guilty to otherwise non-waivable offenses under the involuntary waiver statute. Further, defendant understood that if he did not accept these conditions of the plea offer, the State intended to pursue involuntary waiver and accordingly charge him with waivable offenses.

A-0916-24

We are also unpersuaded by defendant's argument, on the current record, that he was unaware of the distinction between voluntary and involuntary waiver, and that he could return to juvenile court if not convicted of a waivable offense, pursuant to N.J.S.A. 2A:4A-26.1(f)(2). At both the case management conference and waiver hearing, the court, defense counsel, and the State expressly explained to defendant the mechanisms of the involuntary waiver statute should he decide to decline the plea offer, in light of the fact that the State intended to charge defendant with waivable offenses if he did so. Further, the State and defense counsel explained to the judge in the defendant's presence that the entire premise of the plea offer was to ensure defendant faced the adult consequences of his actions, even if those offenses to which he intended to plead guilty were non-waivable.

In any event, we reject defendant's position that the court was required to explicitly inform him regarding N.J.S.A. 2A:4A-26.1(f)(2) in that context, as it unnecessarily would have required the court to not only assume defendant was uninformed, contrary to his sworn statements, but also to advise him of a future, speculative outcome, unmoored to the negotiated plea as represented. Indeed, defendant would only return to the Family Part if he rejected the plea offer, the

25

State pursued involuntary waiver, and defendant was tried and found not guilty with respect to both the waivable offenses to which he was previously charged.

We conclude requiring the judge to assume such a hypothetical scenario particularly inappropriate here where defendant told the court he intended to immediately plead guilty to two lesser charges in adult court and where multiple parties expressly informed him of steps involved with any involuntary waiver. There was no reason under these facts, and where there was neither hesitation nor uncertainty in defendant's decision, to inform him of the consequences of a trial that was not going to occur, nor a plea different than what was told to the court he intended to enter.

We are unpersuaded that the cases cited by defendant—Padilla v. Kentucky, 599 U.S. 356 (2010); State v. Bellamy, 178 N.J. 127 (2003); State v. Gaitan, 209 N.J. 339 (2012); State v. Heitzman, 107 N.J. 603 (1987) (Wilentz, C.J., dissenting); and State v. Nunez-Valdez, 200 N.J. 129 (2009)—compel a contrary result as they are wholly distinguishable factually and legally. In Padilla, the United States Supreme Court addressed whether counsel's failure to advise a non-citizen defendant of the deportation consequences of a guilty plea constituted ineffective assistance under the Sixth Amendment. 599 U.S. at 374-75. The Court held that the defendant was clearly deportable under the

applicable statute, and thus, his counsel's failure to provide accurate advice was constitutionally deficient under Strickland.  Ibid.

State v. Bellamy involved the failure to advise a defendant of the possibility of civil commitment under the Sexually Violent Predator Act because of his guilty plea.  178 N.J. at 135-40.  Our Supreme Court held that fundamental fairness required that a defendant be informed of the possibility of future commitment as it could be for a term longer than his incarceration.  Ibid.

In State v. Gaitan, our Supreme Court considered whether the rule announced in Padilla should be applied retroactively to cases on collateral review.  209 N.J. at 364.  The Court held that Padilla announced a new rule of law and under both federal and state retroactivity principles, was not to be applied retroactively to cases that reached finality before Padilla was decided. In addition, the court differentiated between affirmative misadvice and mere failure to advise, holding that only affirmative misadvice could support a claim of ineffective assistance under pre-Padilla law.  Id. at 379.  In Nunez-Valdez, the defendant was deemed to have received ineffective assistance of counsel when provided false advice with respect to potential deportation.  200 N.J. at 129.

A-0916-24

In Heitzman, our Supreme Court affirmed substantially on the basis of the majority opinion in our decision, where we held that "defendant need be informed only of the penal consequences of his plea and not the collateral consequences, such as loss of public or private employment, effect on immigration status, voting rights, possible auto license suspension, possible dishonorable discharge from the military, or anything else." Heitzman, 107 N.J. at 604.

Contrary to these authorities, the issues presented here do not involve claims of misadvice regarding deportation such as in Padilla, Gaitan, or Nunez-Valdez, whose holdings centered on the unique and severe collateral consequence of deportation and where the courts' analysis was rooted in the evolving professional norms regarding immigration advice at the time of the plea. Nor do they relate to a civil penalty intimately tied to the criminal process such as in Bellamy, which was appropriately limited to the unique context of civil commitment for sex offenders and the extraordinary liberty interests at stake. Likewise, defendant's voluntary and knowing plea does not implicate the retroactivity of new constitutional rules or the failure to advise of collateral consequences such as employment forfeiture as in Heitzman. Rather, this appeal involved a fully informed plea, in which defendant advised the court that he

intended to plead guilty to reduced charges, a wholly distinct set of facts and legal issues that do not align or contravene the holdings of <u>Padilla</u>, <u>Bellamy</u>, <u>Gaitan</u>, <u>Heitzman</u>, or <u>Nunez-Valdez</u>.

Defendant also contends that while due process in an involuntary waiver is defined by statute and our common law, no such protections are afforded to a juvenile's decision to voluntarily waive jurisdiction to the adult court. He asserts that the waiver hearing in this case highlights the lack of meaningful protections not only for this juvenile but also all juveniles electing to voluntarily waive to adult court. For the reasons stated, we find no support for defendant's due process arguments. He and his counsel negotiated a plea, the terms of which, including his agreement to voluntarily waive his case to adult court, were thoroughly addressed by the court.

## IV.

Second, defendant contends a remand is required because the judge failed to consider all applicable mitigating factors and improperly weighed the aggravating factors. Specifically, regarding the judge's application of the mitigating factors, defendant asserts the judge: (1) did not give sufficient weight to mitigating factors seven, nine, and fourteen; (2) failed to apply mitigating factor eight, N.J.S.A. 2C:44-1(b)(8) ("the defendant's conduct was the result of

circumstances unlikely to recur") despite defendant's age and remorse; and (3) failed to properly consider defendant's medical history by applying either mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11) ("imprisonment of the defendant would entail excessive hardship to the defendant") or a non-statutory factor. Further, with respect to the application of aggravating factors, he contends the judge improperly relied upon the family member's "anguish" and the victim's suffering during his critical care treatment and "ignored the accepted social science regarding . . . a youth's brain." Defendant also contends "the interest[s] of justice demand a [sentence] downgrade." He maintains his illness and medical history "substantiate a finding that the interest of justice would be best served by sentencing this defendant to a three-year sentence . . . ." We are unpersuaded by all these arguments.

We employ a deferential standard when reviewing a trial court's sentencing decision. State v. Grate, 220 N.J. 317, 337 (2015); State v. Fuentes, 217 N.J. 57, 70 (2014). We must affirm a sentence unless: (1) the trial court failed to follow the sentencing guidelines; (2) the court's findings of aggravating and mitigating factors were not based on competent and credible evidence in the record; or (3) "'the [court's] application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial

conscience.'" Fuentes, 217 N.J. at 70 (second alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

"While the sentence imposed must be a lawful one, the court's decision to impose a sentence in accordance with the plea agreement should be given great respect, since a 'presumption of reasonableness . . . attaches to criminal sentences imposed on plea bargain defendants.'" State v. S.C., 289 N.J. Super. 61, 71 (App. Div. 1996) (alteration in original) (quoting State v. Sainz, 107 N.J. 283, 294 (1987)).

Rule 3:21-4(h) provides that "[a]t the time [the] sentence is imposed[,] the judge shall state reasons for imposing such sentence including findings pursuant to the criteria for withholding or imposing imprisonment." Ibid. A sentencing judge's statement of the factual basis for their findings is necessary and "important for meaningful appellate review of any criminal sentence" because the appellate court is "expected to assess the aggravating and mitigating factors to determine whether they 'were based upon competent credible evidence in the record.'" State v. Bieniek, 200 N.J. 601, 608 (2010) (quoting Roth, 95 N.J. 364-65).

Relevant to defendant's argument, we note aggravating factor two "focuses on the setting of the offense itself with particular attention to any

factors that rendered the victim vulnerable or incapable of resistance at the time of the crime." State v. Lawless, 214 N.J. 594, 611 (2013). A court may not base its finding of aggravating factor two solely upon the fact that the harm contemplated by the statute proscribing the criminal conduct occurred. State v. Kromphold, 162 N.J. 345, 356-58 (2000). A court further should not base its finding on "the emotional trauma to the victim's family caused by his death . . . ." State v. Radziwil, 235 N.J. Super. 557, 575 (App. Div. 1989), aff'd o.b., 121 N.J. 527 (1990) (citations omitted). Rather, the sentencing court "must engage in a pragmatic assessment of the totality of harm inflicted by the offender on the victim . . . ." Kromphold, 162 N.J. at 358; see also Lawless, 214 N.J. at 613 ("N.J.S.A. 2C:44–1(a)(2)'s plain language calls for a precise inquiry limited to the direct victim of the offense.").

Regarding defendant's request for a downgraded sentence, it is well established "the standard governing the downgrading of a defendant's sentence . . . is high." State v. Megargel, 143 N.J. 484, 500 (1996). With respect to a second-degree offense, N.J.S.A. 2C:44-1(f)(2) provides:

> In cases of convictions for crimes of the . . . second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than

that of the crime for which the defendant was convicted. If the court does impose sentence pursuant to this paragraph, ... the sentence shall not become final for 10 days in order to permit the appeal of the sentence by the prosecution.

In Megargel, based on N.J.S.A. 2C:44-1(f)(2), our Supreme Court established a two-part test to justify a sentence downgrade: (1) "[t]he court must clearly be convinced that the mitigating factors substantially outweigh the aggravating ones;'" and (2) "the interest of justice demand[s] a downgraded sentence." Id. at 496 (quoting N.J.S.A. 2C:44-1(f)(2)).

"Accordingly, downgrading, while not required, is appropriate where both prongs of the statutory test are satisfied." State v. Trinidad, 241 N.J. 425, 453 (2020). In applying this test, "the severity of the crime" is "the most . . . important factor." Id. at 500. Furthermore, "[t]he reasons justifying a downgrade must be 'compelling,' and something in addition to and separate from, the mitigating factors that substantially outweigh the aggravating factors." State v. Rice, 425 N.J. Super. 375, 384 (App. Div. 2013) (quoting Megargel, 143 N.J. at 505).

Against these principles, we satisfied the record is replete with competent and credible evidence to support the judge's findings that the aggravating factors outweighed the mitigating factors and that the interests of justice do not warrant

a sentencing downgrade, particularly in light of the fact that defendant's sentence was pursuant to the valid negotiated plea agreement. The record demonstrates the judge provided a comprehensive recitation of the facts underlying his findings with respect to the aggravating and mitigating factors, including defendant's character and remorse.

We reject defendant's contention that the judge did not properly consider his medical history in light of the fact that the judge expressly accounted for this circumstance in his findings. Further, to the extent the court improperly relied upon the victim's family suffering in his application of aggravating factor two, we discern that the judge primarily relied upon defendant's suffering prior to his death for the basis of his finding. See Kromphold, 162 N.J. at 358. Indeed, the record indicates that the judge based his finding on the fact that defendant suffered both emotional and physical harm while in critical care over the course of fifty days, including several intensive surgeries during this period. We accordingly discern no basis to disturb the court's findings on defendant's sentence.

V.

Finally, defendant asserts that his counsel's performance at the waiver hearing was constitutionally ineffective under the two-part test detailed in

34

<u>Strickland</u>, 466 U.S. at 687.[3]  Defendant maintains his trial counsel's performance was deficient because he failed to fully explain the waiver processes.  Specifically, defendant asserts his counsel failed to advise him of consequences of being convicted of a non-waivable offense.  Defendant states that he made his voluntary waiver without full knowledge of all relevant and material information and his subsequent guilty plea is invalidated.

As noted, we decline to address defendant's PCR-related claims and do so because as a general matter, "ineffective assistance of counsel claims are not entertained on direct appeal 'because such claims involve allegations and evidence that lie outside the trial record.'"  <u>State v. Allah</u>, 170 N.J. 269, 285 (2002) (quoting <u>State v. Preciose</u>, 129 N.J. 451, 460 (1992)); <u>see also</u> <u>State v. Mohammed</u>, 226 N.J. 71, 81 n.5 (2016) (declining to address an ineffective-assistance claim raised first on appeal because such was "better suited for review on [PCR]").  "Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims

---

[3]  To establish ineffective assistance of counsel, a convicted defendant must satisfy the two-part test enunciated in <u>Strickland</u>, by demonstrating that:  (1) counsel's performance was deficient, and (2) the deficient performance actually prejudiced the accused's defense.  <u>Strickland</u>, 466 U.S. at 687.  The <u>Strickland</u> test has been adopted for application under our State constitution in New Jersey. <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987).

involve allegations and evidence that lie outside the trial record." Preciose, 129 N.J. at 460 (citations omitted); see also State v. Sparano, 249 N.J. Super. 411, 419 (App. Div. 1991) ("Generally, a claim of ineffective assistance of counsel cannot be raised on direct appeal.").

The more appropriate forum to raise such claims is in a petition for post-conviction relief where an adequate, reviewable record can be developed. See State v. Miller, 216 N.J. 40, 70 n.7 (2013); State v. McDonald, 211 N.J. 4, 29-30 (2012). That is particularly true where, as here, the allegations of ineffective assistance appear to implicate discussions between defendant and his counsel that may necessitate an evidentiary hearing. The record before us does not include, for example, certifications or testimony as to any discussions between defendant and his trial attorney concerning whether counsel informed defendant about both voluntary and involuntary waiver processes. Furthermore, because defendant raises his ineffective assistance claims for the first time in this appeal, the trial court did not have an opportunity to make findings regarding the Strickland/Fritz test. In reaching this result, we expressly preserve defendant's right to make his arguments to a PCR court.

A-0916-24

To the extent we have not specifically addressed any of defendant's arguments, it is because we have concluded they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed in part and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M. C. Harley*

Clerk of the Appellate Division

A-0916-24